IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

OHIO VALLEY EVIRONMENTAL COALITION,
WEST VIRGINIA HIGHLANDS CONSERVANCY,
APPALACHIAN VOICES, and
SIERRA CLUB,

                Plaintiffs,

v.                                                  CIVIL ACTION NO.   3:19-0573

LEXINGTON COAL COMPANY, LLC,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiffs' Motion for Partial Summary Judgment on Jurisdiction and Liability (ECF No. 21). For the following reasons, the Court **GRANTS** the Motion.

**I. BACKGROUND**

Plaintiffs, Ohio Valley Environmental Coalition, West Virginia Highlands Conservancy, Appalachian Voices, and Sierra Club, filed this case pursuant to the citizen suit provisions of the Federal Water Pollution Control Act ("Clean Water Act" or "CWA"), 33 U.S.C. §§ 1251–1388, and the Surface Mining Control and Reclamation Act ("SMCRA"), 30 U.S.C. §§ 1201–1328. The Complaint claims that Defendant, Lexington Coal Company, is liable under: (1) CWA section 402 for violating its permit limitations on selenium discharges; (2) CWA section 401 for discharging high levels of ionic pollutants and causing biological degradation; and (3) SMCRA regulations for

discharging those same ionic pollutants.[1] Two mines give rise to these claims: (1) Low Gap No. 2 Mine, in Mingo County, West Virginia (SMCRA Permit S401395 and WV/NPDES Permit WV1016288); and (2) No. 10 Mine, also located in Mingo County, West Virginia (SMCRA Permit S501501 and WV/NPDES Permit WV1020579).[2] Pls.' Exs. 1–4.

Plaintiffs now seek summary judgment on jurisdictional issues (standing) and liability. Defendant does not contest Plaintiffs' arguments on standing or liability. Rather, Defendant argues that the Court does not have jurisdiction because the suit is precluded by West Virginia Department of Environmental Protection ("DEP") administrative enforcement actions. After stating the standard of review, the Court will address Defendant's preclusion argument then Plaintiffs' jurisdictional and liability claims.

## II. STANDARD OF REVIEW

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, that party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 256. The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence." *Id.* at 252.

1. Preclusion

Defendant argues that Plaintiffs' claims are precluded by section 309(g) of the Clean Water

---

[1] Plaintiffs have abandoned their CWA section 402 claims for ionic pollutants. *See* Pls.' Mem 1 n.1, (citing 84 Fed. Reg. 16410 (Apr. 2, 2019)); then 83 Fed. Reg. 46945 (Sept. 17, 2018)).
[2] Defendant obtained the permits for the Low Gap No. 2 Mine from Brooks Run South Mining and the permits for the No. 10 Mine from Premium Energy, LLC in 2018.

Act, which provides that a state enforcement action bars citizen suits of the same claim if:

> (ii) a State has commenced and is diligently prosecuting an action under a State law comparable to this subsection, or
>
> (iii) the State has issued a final order not subject to further judicial review and the violator has paid a penalty assessed under this subsection, or such comparable State law.

33 U.S.C. § 1319(g)(6)(A).

Defendant submits five documents from DEP to support this claim. Defendant's Exhibit 1 is an Order for Compliance at the Low Gap No. 2 Mine (Outlets 02, 17, 24, 59, and 60) dated November 18, 2018. Exhibit 2 amended this November order to add outlet 019. Exhibit 3 is an Order for Compliance at the No. 10 Mine (Outlets 001, 012, 031, 045, and 047) dated April 21, 2017. Exhibit 4 amended the April order to remove Outlets 045 and 047. Both orders contain findings that Defendant exceeded limitations on selenium discharges and ordered Defendant to submit a Plan of Action for compliance. Neither order penalized Defendant or its predecessors for these violations.

Exhibit 5 is a Civil Penalty Assessment Notice and Proposed Consent Order. These records propose penalties for Defendant's noncompliance at three mines, including the Low Gap No. 2 Mine. The notice expressly provides that Defendant "ha[s] the option of choosing not to enter into the Draft Consent Order." ECF No. 25-5 at 1.

Defendant argues that these orders preclude Plaintiffs' claims and deprive the Court of jurisdiction. However, Defendant's conclusion grossly exceeds the evidence presented in at least three ways. First, Defendant fails to explain how these administrative actions preclude Plaintiffs' SMCRA claims, which are premised on different regulations. Second, Defendant fails to explain how these actions (which found selenium-related violations) preclude Plaintiffs' claims arising from ionic pollutants. And third, the Orders of Compliance exclude a number of outlets included

in Plaintiffs' claims while the Proposed Consent Order omits the No. 10 Mine entirely. Therefore, to the extent that Plaintiffs' claims are broader than the scope of these orders, the Court concludes that they are not barred.

As to the claims that do overlap with DEP's prior actions, the Court finds that neither the Proposed Consent Order nor the Orders for Compliance meet the section 309(g) criteria. First, the Proposed Consent Order falls under section 309(g)'s exception authorizing citizen suits which predate the "commencement" of the administrative action. 21 U.S.C. § 1319(g)(6)(B). Plaintiffs' June 4, 2019 Notice of Intent to File Citizen Suit predates the DEP's December 2020 Proposed Consent Order by more than a year and a half.

Moreover, even if DEP "commenced" its assessment of penalties before Plaintiffs' Notice of Intent, the Proposed Consent Order does not satisfy section 309(g) because the DEP did not bring the Proposed Consent Order under "comparable" law. *See* 33 U.S.C. § 1319 (g)(6)(ii), (iii). As Plaintiffs argue, the Proposed Consent Order does not meet this requirement because West Virginia's penalty provisions are not comparable to the CWA.

In *United States v. Smithfield Foods, Inc.*, 191 F.3d 516 (4th Cir. 1999), the Fourth Circuit affirmed the district court's ruling that the EPA's enforcement action was not precluded by section 309(g) because Virginia's enforcement scheme "did not give the Commonwealth authority to assess administrative penalties without the violator's consent." *Smithfield Foods*, 191 F.3d at 525. This Court has reached the same conclusion when contrasting West Virginia's administrative penalty provisions to the CWA. In *Sierra Club v. Powellton Coal Co., LLC*, Judge Copenhaver held that West Virginia law is "markedly different" from section 309(g) "because [it] does not provide for the assessment of administrative penalties without the violator's consent." 662 F. Supp. 2d 514, 530 (S.D. W. Va. 2009). Judge Copenhaver reasoned that this difference is significant

"because W. Va. Code R. § 47-1-5.4 allows alleged violators to terminate administrative proceedings 'at any time and for any reason,' . . . . [and] provides violators with ample opportunity to attempt to avoid citizen suits by manipulation of the West Virginia administrative enforcement process." *Id*. at 530 (comparing W. Va. Code R. § 47-1-2.2 with 33 U.S.C. § 1319(g)(1)).

This Court agrees with Judge Copenhaver's application of *Smithfield Foods* and holds that West Virginia's administrative enforcement provisions are not comparable to the CWA because Defendant has the authority to reject the Proposed Consent Order and avoid civil penalties at any point and for any reason. Since *Powellton Coal*, West Virginia recodified W. Va. Code R. § 47-1-5.4 as W. Va. Code R. § 47-30B-5. However, alleged violators may still terminate the DEP's enforcement action "at any time and for any reason." W. Va. Code R. 47-30B-5.4. This authority is expressly stated in the notice attached to the Proposed Consent Order. The potential for abuse and manipulation of this authority undermines the purpose of the CWA, which does not require alleged violators to consent to penalties. *Powellton Coal Co.*, 662 F. Supp. 2d at 530. Therefore, the Proposed Consent Order does not preclude the claims here.

As for the Orders of Compliance, the Court finds that these are final orders that cannot preclude Plaintiffs' claims because DEP did not impose monetary penalties. Section 309(g) only precludes citizen suits if the state has "issued a final order not subject to further judicial review and the violator has paid a penalty assessed . . . . " 33 U.S.C. § 1319(g)(6)(iii). Defendants do not allege that they have paid any penalties and there is no evidence to this effect in the orders. Accordingly, the Court concludes that no existing or final administrative action precludes this suit under section 309(g).

2. **Plaintiffs' Claims**

Plaintiffs seek summary judgment on their standing to bring suit as well as three causes of

action. Bearing in mind that Defendant has not disputed Plaintiffs' arguments or presented any evidence to raise a dispute of material fact, the Court will now turn to Plaintiffs' evidence to confirm that they are entitled to judgment as a matter of law.

   **a. Plaintiffs have standing.**

Federal courts do not have jurisdiction over a suit unless the plaintiff can establish standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Standing requires three elements: (1) an injury in fact that is both concrete and actual or imminent; (2) a causal connection between the injury and the defendant's alleged wrongdoing; and (3) a substantial likelihood that a favorable judgment will redress the injury. *Id*.

Plaintiffs have offered sufficient evidence to satisfy each of these elements. First, they have demonstrated that at least one of their members suffered concrete harm. They submit a declaration from Ms. Donna Branham, who has visited Ben Creek and Pigeon Creek since her childhood. According to her declaration, she has noticed that the creeks' conditions have since degraded. She described the creeks as "discolored" and containing "no visible aquatic life." Pls.' Ex. 15. These aesthetic and recreational harms are adequate to establish injury in fact. *See Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).

Plaintiffs have established a causal connection between these injuries and Defendant's conduct. Defendant's monitoring reports show that it is discharging selenium and ionic pollutants into tributaries of Ben Creek and Pigeon Creek. According to Plaintiffs' expert reports, these ionic discharges exceed the well-established conductivity threshold that is safe for aquatic life. In addition, DEP has recognized that both creeks are "impaired" for selenium.

Finally, Plaintiffs have established redressability. It is well established that civil penalties and injunctive relief can redress the Plaintiffs' environmental injuries and deter future violations.

*Laidlaw*, 528 U.S. at 185–86.

Based on these findings, the Court further concludes that Plaintiffs have organizational standing. An organization has representational standing when (1) at least one of its members would have standing to sue in his or her own right, (2) the organization's purpose is germane to the interests it seeks to protect, and (3) there is no need for the direct participation of the individual members in the action. *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 155 (4th Cir. 2000). Ms. Branham is a member of three of the four Plaintiff-organizations, enforcement of the CWA and SMCRA is germane to each organizations' purpose, and there is no need for individual member involvement. The Court **GRANTS** Plaintiffs' Motion for Partial Summary Judgment as to standing.

### b. Defendant violated CWA section 402 by violating conditions of its permit limiting the discharge of selenium.

Section 505(a)(1) of the CWA authorizes citizens to bring suit for violation of any "effluent standard or limitation," including violations of National Pollutant Discharge Elimination System ("NPDES") permits. 33 U.S.C. § 1365(a); 33 U.S.C. § 1365(f)(6). "[T]he CWA imposes strict liability for permit violations." *OVEC v. Bluestone Coal Corp.*, No. 1:19-00576, 2020 U.S. Dist. LEXIS 132471, at *16 (S.D. W. Va. July 27, 2020) (citing *Am. Canoe Ass'n v. Murphy Farms*, 412 F.3d 536, 540 (4th Cir. 2005)). When determining liability for violations of as NPDES permit, the court must "compare the allowable quantities of pollution listed in the permits with the [] available statistics on actual pollution." *Id*. (quoting *OVEC v. Hobet Min.*, LLC, 723 F. Supp. 2d 886, 896 (S.D. W. Va. 2010)).

Defendant's certified discharge monitoring reports show that it violated the No. 2 Mine permit limitation on selenium discharge from October 2018 through at least April 2020. The

reports also show that Defendant violated the No. 10 Mine permit limitation on selenium discharge from at least April 2018 through June 2020. The reports calculate 804 days of violations for the Low Gap No. 2 Mine and 3,280 days of violations for the No. 10 Mine. Defendant does not dispute these numbers. Therefore, the Court **FINDS** that Defendant is liable for these violations under the CWA and **GRANTS** summary judgment to the Plaintiffs as to this claim.

### c. Defendant violated CWA section 401 certification by discharging high levels of pollutants in violation of West Virginia's Narrative Water Quality Standards.

Section 505 of the CWA authorizes citizen suits against any person alleged to be in violation of an effluent standard or limitation. An "effluent standard or limitation" is defined to include a "certification under section [401 of the CWA]", as well as any "unlawful act under subsection (a) of section 1311 of [Title 33]." *See* 33 U.S.C. § 1365(f)(1), (5). Because section 401 certifications are "effluent standard[s] or limitation[s]" under the Act, "Plaintiffs are clearly authorized by Section 505 to bring a citizens suit alleging violation of Section 401." *N. Carolina Shellfish Growers Ass'n v. Holly Ridge Assocs., L.L.C.*, 200 F. Supp. 2d 551, 558 (E.D.N.C. 2001); *see also Ohio Valley Env't Coal. v. Fola Coal Co.*, LLC, No. CV 2:13-16044, 2015 WL 13731915, at *14 (S.D. W.Va. May 29, 2015).

Condition 13 of the Defendant's section 401 certification for the No. 10 Mine prohibits it from violating state water quality standards. West Virginia's water quality standards are violated if surface mining operation discharges cause or materially contribute to conditions that are "harmful, hazardous or toxic to man, animal or aquatic life" or "which adversely alter[] the integrity of the waters of the State." 47 C.S.R. § 47-2-3.2. Additionally, "no significant adverse impact to the chemical, physical, hydrologic, or biological components of aquatic ecosystems shall be allowed." *Id*. Any discharge that does not comply with these standards—and by extension the

certification—violates the CWA.

To prove that Defendant has violated these narrative water quality standards, Plaintiffs must show (1) that the streams into which Defendant discharges are impaired, and (2) that ionic pollution from those discharges is causing or materially contributing to that impairment. *See OVEC v. Fola Coal Co., LLC*, 2017 WL 2312478, at *3 (S.D. W. Va. May 26, 2017).

DEP's List of Impaired Streams included both Pigeon Creek and Ben Creek as biologically impaired in 2016, and Plaintiffs' expert reports indicate that the streams continue to be impaired. On July 20 and 21, 2020, Douglas Wood, a veteran of DEP, collected samples from waters downstream from the relevant outfalls at Low Gap No. 2 Mine and No. 10 Mine and sent those samples to Dr. Matthew Baker, a professor of environment science. Dr. Baker then calculated the West Virginia Stream Condition Index ("WVSCI") score and compared it to the EPA's impairment threshold. Dr. Baker concluded that "there [is no] uncertainty about whether the tributaries in question have been, and continue to be impaired." ECF No. 21-7 at 13. This Court has previously determined that a WVSCI score below the EPA-approved impairment threshold establishes a violation of West Virginia's biological narrative water quality standards, as embodied in § 47-2-3.2. *OVEC v. Fola Coal Co.*, LLC, 82 F. Supp. 3d 673, 677 (S.D.W. Va. 2015), aff'd sub nom. *OVEC v. Fola Coal Co.*, LLC, 845 F.3d 133 (4th Cir. 2017). The Court finds that Plaintiffs' evidence is consistent with that finding and concludes that they have met their burden of proof as to waterway impairment.

Next, Plaintiffs submit several expert reports which establish the causal relationship between these impaired waterways and discharges from the Low Gap No. 2 Mine and No. 10 Mine. Dr. Baker's report contains a review of the scientific literature, including "[m]any studies [that] have reported that streams below surface mines and valley fills which exhibit elevated conductivity

(e.g., >300 µS/cm, but often >> 1000 µS/cm) also show signs of biological impairment." ECF No. 21-7. Dr. Baker concluded that the "elevated ionic concentrations [in Ben and Pigeon Creeks], measured as specific conductance, are a direct consequence of surface coal mining activity and the principal cause of impairment." *Id*. Based on this evidence, the Court finds that Plaintiffs have also met their burden of proof as to causation.

Defendant does not dispute Plaintiffs' representation of the law or their expert reports, nor has Defendant offered any evidence to raise a dispute of material fact. Therefore, the Court **FINDS** that Defendant is liable for these violations under the CWA and **GRANTS** summary judgment to the Plaintiffs as to this claim.

### a. Defendant violated the SMCRA by discharging excessive levels of selenium and ionic pollutants.

Both West Virginia and federal SMCRA regulations provide that "[d]ischarges of water from areas disturbed by surface mining activities shall be made in compliance with all applicable State and Federal water quality laws and regulations . . . . " 30 C.F.R. § 816.42; 38 C.S.R. § 2-14.5.b. Consequently, violations of NPDES permit conditions and water quality standards impose liability under the SMCRA. As held above, Plaintiffs violated NPDES permit limits on selenium discharges at the Low Gap No. 2 Mine and No. 10 Mine, and West Virginia's narrative water quality standards at the No. 10 Mine. Defendant does not dispute Plaintiffs' representation of the law or their evidence, nor has Defendant offered any evidence to raise a dispute of material fact. Therefore, the Court **FINDS** that Defendant is liable for these violations under the SMCRA and **GRANTS** summary judgment to the Plaintiffs as to these claims.

## III. CONCLUSION

Based on the analysis above, the Court **GRANTS** Plaintiffs' Motion for Partial Summary Judgment on Jurisdiction and Liability (ECF No. 21). The issue of proper relief remains pending. Consistent with this Court's February 2, 2021 Order (ECF No. 28), the parties' status report and trial plan are now due **no later than April 1, 2021**.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:   March 22, 2021

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE