IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

WEST VIRGINIA HIGHLANDS CONSERVANCY,
APPALACHIAN VOICES, and
SIERRA CLUB,

       Plaintiffs,

v.               CIVIL ACTION NO.  3:19-0573

LEXINGTON COAL COMPANY, LLC,

       Defendant.

# ORDER

  Defendant Lexington Coal Company submitted a Status Report on August 15, 2022. ECF No. 83. However, continuing in a long line of noncompliant filings, the report fails to satisfy conditions set out by the Court. *See* ECF Nos. 54, 60, 70, 80.  Namely, the Status Report neither addresses inconsistent compliance with selenium standards at three outlets nor does it lay out a discernible plan regarding compliance with ionic pollution standards. ECF No. 83.

  The Status Report addresses three primary points. First, Defendant informs the Court it has ceased active mining and begun final reclamation activities. *Id.* Second, the Status Report mentions—without providing pertinent information regarding—Biochemical Reactor Systems to address selenium issues at Outlets 031 and 019, under Permits WV1020579 and WV1016288 respectively. *Id.* Defendant finally claims it is working with unidentified "additional experts in water quality compliance" and professes an otherwise unsubstantiated belief that reclamation activities will improve water quality, specifically in decreasing ionic pollution. *Id.*  The Status Report spans little more than one page. *Id.*

The Status Report does little, if anything, to cure defects previously identified by the Court. In its Order on July 18, 2022, the Court responded to Defendant's most recent Remediation Plan, ECF No. 71, noting it lacked an acknowledgment of periodic noncompliance with selenium limits at Outlets 012, 047, and 045 of Permit WV1020579, ECF No. 80. Moreover, the Remediation Plan consisted of "mere conclusory assertions that compliance [would] be achieved" rather than "specific interim milestones or GANTT charts" to address ionic pollution. *Id.* Finally, the Order notes that Defendant had failed to submit monthly reports to the Court and Plaintiffs, despite an affidavit submitted only months prior promising otherwise. *Id.* (citing ECF No. 71).

The Court addresses selenium treatment, ionic pollution, and monthly status reports in turn. Regarding selenium limits, the Status Report makes no mention of inconsistent compliance with selenium standards at Outlets 012, 045, and 047 and fails to provide the details necessary to address noncompliance with selenium limits at Outlet Nos. 019 and 031. *Id.* The Court referenced the former in its Order on July 18, 2022, noting "Defendant did not identify any action it took to reduce selenium levels. . . and provides no basis to assert [the three outlets] are in compliance with the selenium limit." ECF No. 80. As of this Order, Defendant has still provided no explanation or tangible plan to achieve consistent compliance at these three sites. Likewise, while the Status Report claims that Biochemical Reactor Systems will bring Outlets 019 and 031 into compliance with selenium standards, it provides no timeline or discernible steps for achieving compliance at these two sites. ECF No. 83.

The Status Report also fails to sufficiently address the problem of ionic pollution. The Court ordered Defendant to "achieve compliance with West Virginia ionic pollution standards as soon as possible" and "include specific and enforceable milestones." ECF Nos. 70, 80. Neither the most recent Remediation Plan, ECF No. 71, nor the Status Report, ECF No. 83, does either.

Instead, the Status Report provides only vague assertions of working with experts in water quality compliance to "look at" additional measures to bring the sites into compliance with ionic pollution standards. *Id.* None of these measures are discussed, let alone identified, in the report. *Id.* Moreover, the report promises that reclamation activities and establishing vegetation will "result in a continued improvement of the water quality discharges from the sites in relation to the ionic pollution standards." *Id.* The Court reminds Defendant that it is ordered to <u>achieve compliance</u> with ionic pollution standards, not simply improve water quality in relation to these standards. ECF No. 80.

Lastly, while the Status Report does suggest an attempt to comply with the monthly status report requirement, it does little to assure the Court or Plaintiffs that Defendant is implementing the measures needed to achieve compliance. *Id.* The Court has repeatedly ordered Defendant to, among other things, submit "monthly reports . . . describing the process and the plan moving forward." ECF No. 70 (quoting ECF No. 80). As submitted, the most recent Status Report fails to describe Defendant's process or plan in any discernible way. Defendant does not include documentation regarding Biochemical Reactor Systems at two outlets or identify the "additional experts in water quality compliance" with whom it is working to address ionic pollution, let alone specific and enforceable interim milestones. *Id.* Like Defendant's previous Remediation Plan, ECF No. 71, the report, ECF No. 83, is bare bones at best and certainly not sufficient to meet the Court's requirements.

For these reasons, Defendant continues to fall short of the Court's mandates. Therefore, the Court **ORDERS** that Defendant continue submitting the accrued fine every fourteen days until purged of contempt by submission of a full and complete plan, as set out in the May 18, 2022, ECF

No. 70, and July 18, 2022, ECF No. 80, Orders. Because Defendant failed to purge contempt on or before August 1, 2022, the daily sanction has increased to $1,500 as of that date. ECF No. 80.

Additionally, the Court lacks the information necessary to assess the sufficiency of treatment measures for selenium at Outlet Nos. 031 and 019, cited in Defendant's most recent Status Report. ECF No. 83. The Court therefore **ORDERS** Defendant to produce and submit the referenced Permit Modifications for WV1020579 and WV1016288, specifically the portions relating to the Biochemical Reactor Systems.

If not clear already, the Court is losing patience with Defendant's inability to satisfy its court-ordered directives. Sanctions will continue, and further noncompliance will result in increasing sanctions and a show-cause order directing Defendant's corporate officer to appear.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: August 25, 2022

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE