IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

WEST VIRGINIA HIGHLANDS CONSERVANCY,
APPALACHIAN VOICES, and
SIERRA CLUB,

           Plaintiffs,

v.                                       CIVIL ACTION NO. 3:19-0573

LEXINGTON COAL COMPANY, LLC,

           Defendant.

## ORDER

Defendant Lexington Coal has moved to purge contempt. Def.'s Mot. to Purge Contempt, ECF No. 88. While the Court will not formally lift the contempt order at this time, it will continue to stay the per diem fines pending Defendant's submission of ongoing monitoring data, a monitoring plan, and indications as to how data collection has informed treatment strategy thus far. In the December 2022 status report, Defendant should also inform the Court of any pending or anticipated permit filings involved in implementing the proposed remediation plan. Following the submission of this status report, the Court asks that Plaintiffs explain their position regarding an evidentiary hearing as well as the lifting of the contempt order.

Defendant's contempt traces back to an order entered more than a year and a half ago, in which the Court found Defendant liable for certain violations of the Clean Water Act (CWA) and the Surface Mining Control and Reclamation Act (SMCRA). ECF Nos. 29, 31. The Court granted Plaintiffs' request for injunctive relief and ordered Defendant to:

1. Submit a plan to come into compliance with the CWA and SMCRA;
2. Achieve compliance with selenium limits no later than a year from plan submission;
3. Achieve compliance with West Virginia ionic pollution standards as soon as possible; and

    4.  Include specific and enforceable interim milestones no longer than one year apart.

ECF No. 54. When Defendant had still not complied with this order by March 16, 2022, the Court imposed the following additional conditions:

1. The plan must be certified by a professional engineer who must provide an affidavit that upon his or her professional judgment, compliance for selenium limits would be accomplished within a year and ionic pollution restrictions would be met as soon as possible
2. The plan must include either references to other operations where the chosen technology reduced pollutants, or the professional engineer must have demonstrated experience in treating selenium and ionic pollution in Appalachian mine sites
3. The plan must include a GANTT chart defining the steps of the compliance process, a timeline for completion of each step, and a date for final compliance
4. Defendant must submit monthly reports to both this Court and Plaintiffs describing the process and the plan moving forward.

ECF No. 60.

    Months later, after Defendant had still not submitted a remediation plan that complied with these conditions, the Court entered a finding of contempt. ECF No. 70. It imposed a $1,000 per day fine on Defendant starting on May 29, 2022, ECF No. 80, later increasing it to $1,500 per day as of August 1, 2022. ECF No 84. In imposing the per diem fine, the Court noted that—in addition to its failure to submit an adequate remediation plan—Defendant had yet to achieve compliance with selenium limitations at three outlets. ECF No. 80 at 3.

    Finally, on September 6, 2022, Defendant submitted the instant motion to purge contempt and proposed remediation plan. ECF No. 88; Ex. 1—Remediation Plan, ECF No. 88-1. The Court stayed the accrual of the per diem fine while completing a review of the plan. ECF No. 89. During this time, Defendant continued to submit monthly status reports, albeit not in 30-day intervals. *See* Status Rep., ECF No. 93 (submitted on October 14, 2022); Nov. Status Rep., ECF No. 94 (submitted on November 30, 2022).

Upon further review, the Court notes that both the proposed remediation plan and recent status reports are more detailed and thorough than any of Defendant's previous submissions. However, the Court lacks the information necessary to determine whether the plan complies with previous orders. Plaintiffs have indicated that the plan relies on an unfounded assumption that high concentrations of selenium and ionic pollution are only present in underdrain flow and that Defendant's plan will contribute to harmful dewatering of streams. Pls.' Mem. in Opp. to Def.'s Mot. to Purge Contempt, ECF No. 90. However, without a sense of the underdrain or surface flow levels, as well as the selenium and ionic pollution levels in question, the Court cannot determine whether these claims have merit.

Defendant responds to many of Plaintiffs' criticisms by pointing to its internal monitoring plan, claiming that ongoing monitoring will help Defendant identify and fix any of these potential issues. Def.'s Reply to Pls.' Mem. of Law in Opp. to Def.'s Mot. to Purge Contempt at 2, ECF No. 92. The remediation plan sets forth an adaptive-management-style approach in which "internal monitoring . . . will give early indication of the efficacy of treatment employed and allow modification to be integrated early in the process." *Id.* (quoting ECF No. 88-1 at 1). For example, as to the issue of focusing on underdrain flow, Defendant contends that internal monitoring has already been employed to "determine the relative proportions of underdrain and surface flow" as well as "ionic and selenium levels at locations that include the underdrain and downstream of the underdrain." *Id.* at 203. Notably, Defendant plans to use this data to "influence strategic plan implementation" and "timely achieve compliance objectives." *Id.* at 3.

Defendant's October and November 2022 status reports also indicate that data collection has commenced, even if the Court has yet to see any results. According to the October 2022 status report, Heritage Technical Associates (Heritage) "has initiated evaluations of both underdrain and

surface flow and concentration of both conductivity and selenium," ECF No. 93-1 at 1, and according to the November 2022 status report, Heritage "is currently monitoring baseline data to gather information regarding treatment plan implementation," ECF No. 94 at 4.  Though the Court recognizes that trendline analysis may not not applicable until the biochemical reactor and pumping systems have been active for thirty days, that need not prevent Defendant from submitting any data that has been collected. ECF No. 931-1 at 2.

Until it has an opportunity to review this information, the Court will continue to treat the proposed remediation plan as if it is sufficient and **STAY** Defendant's per diem fine pending further order. Additionally, it **DIRECTS** Defendant to 1) produce the results of ongoing monitoring, 2) describe how this monitoring will be performed moving forward, 3) explain how monitoring results have been used to indicate treatment efficacy and inform modifications to the proposed plan thus far, and 3) inform the Court of any pending and anticipated permit filings involved in implementing the remediation plan. This information should be included in the December 2022 status report. The Court also **DIRECTS** that all status reports, including the December 2022 report, be filed **on or before the 27th day of each month**.

Following Defendant's submission of its December status report, the Court **DIRECTS** Plaintiffs to notify the Court of their position on whether Defendant's conduct is sufficient to warrant lifting the sanction or whether Plaintiffs will seek an evidentiary hearing on the matter. Plaintiffs should do so **no more than 21 days** after the December 2022 status report is submitted.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: December 7, 2022

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE