IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

**WEST VIRGINIA HIGHLANDS
CONSERVANCY, APPALACHIAN
VOICES, and SIERRA CLUB,**

        **Plaintiffs,**

        v.                                  Civil Action No. 3:19-cv-00573

**LEXINGTON COAL COMPANY, LLC,**

        **Defendant.**

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO SHOW CAUSE WHY
DEFENDANT SHOULD NOT BE HELD IN FURTHER CIVIL CONTEMPT OF
<u>THIS COURT'S DECEMBER 13, 2021 ORDER</u>**

        As established in Plaintiffs' opening memorandum (CM/ECF #127), Defendant is in further contempt of this Court's December 13, 2021 Order. Defendant has not persuasively contested any of the elements of contempt and, as established below, cannot carry its burden to establish a cognizable defense to civil contempt. Accordingly, Plaintiffs respectfully request that the Court grant their pending motion and institute a <u>per diem</u> civil contempt fine until Defendant purges its contempt.

**LEGAL FRAMEWORK**

        As the Fourth Circuit has observed, civil contempt proceedings follow a burden-shifting framework. *Consumer Fin. Prot. Bureau v. Klopp*, 957 F.3d 454, 461 (4th Cir. 2020). Once the moving party establishes the elements of contempt—which Plaintiffs did in their opening memorandum—"the burden shifts to the defendant" to establish a cognizable defense or else face civil contempt sanctions. *Id.* at 461–62. Defenses to civil contempt may include a good faith attempt at compliance, substantial compliance, or an inability to comply. *Consolidation Coal Co.*

*v. Local 1702, United Mineworkers of Am.*, 683 F.2d 827, 832 (4th Cir. 1982). But the Fourth Circuit has made clear that "good faith *alone* does not immunize a party from a civil contempt sanction for non-compliance with a court order." *McLean v. Cent. States, Se. & Sw. Areas Pension Fund*, 762 F.2d 1204, 1210 (4th Cir. 1985) (emphasis added; citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949)). Rather, good faith must be paired with actions to take "*all* reasonable steps" to ensure compliance. *De Simone v. VSL Pharms., Inc.*, 36 F.4th 518, 529 (4th Cir. 2022) (emphasis original); *see also Consumer Fin. Prot. Bureau*, 957 F.3d at 462; *Estes v. Clarke*, Civ. No. 7:15-cv-00155, 2022 WL 2383956, at *7 (W.D. Va. July 1, 2022).

## ARGUMENT

### I. Defendant Knowingly Violated the December 13, 2021 Order.

Defendant makes no meaningful effort to contest that Plaintiffs have established the elements of contempt. Defendant (at 3 and 5) attempts to maintain that it did not "knowingly" violate the December 13, 2021 Order. But it never contends that it was unaware that its selenium compliance deadline was September 6, 2023, or that it was unaware that it had not complied. Indeed, Defendant could make no such contentions given Defendant's demonstrable awareness of the September 6, 2023 deadline, and its awareness that it has not activated any portion of its proposed treatment system. *See, e.g.*, CM/ECF #117 at 1 & 4.

To the extent that Defendant may be asserting that it did not "knowingly" violate the decree because its violation was not willful, that is not a cognizable defense to civil contempt. Although "knowingly" and "willfully" may be synonymous ways to express a <u>mens rea</u> requirement in criminal law, *Dennis v. United States*, 341 U.S. 494, 500 (1951), that is not so for civil contempt purposes. The law is clear that willfulness is not an element of civil contempt.

2

*McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949); *United States v. Westbrooks*, 780 F.3d 593, 596 n.3 (4th Cir. 2015); *In re Gen. Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995). That is because,

> [s]ince the purpose of [civil contempt] is remedial, it matters not with what intent the defendant did the prohibited act.[] The decree was not fashioned so as to grant or withhold its benefits dependent on the state of mind of respondents. It laid on them a duty to obey … . An act does not cease to be a violation … of a decree merely because it may have been done innocently.

*McComb*, 336 U.S. at 191 (internal footnote omitted). The upshot is that Defendant's violations need not have been willful to be contemptuous. Accordingly, Defendant's assertion that, because (in its view) it "has made good faith efforts to comply with this Court's Orders [it] therefore did not knowing violate the Court's orders" is simply wrong. "[G]ood faith alone does not immunize a party from a civil contempt sanction for non-compliance with a court order." *McLean*, 762 F.3d at 1210. Defendant cannot contest that the elements of civil contempt are satisfied here, and the burden shifted to Defendant to establish a cognizable defense to contempt.

**II.     Defendant Has Not Carried Its Burden To Establish A Cognizable Defense to Civil Contempt.**

As discussed above, the Fourth Circuit has recognized three cognizable defenses to civil contempt: an inability to comply, a good faith attempt to comply by taking all reasonable steps to comply, and substantial compliance. *Consolidation Coal Co.*, 683 F.2d at 832. Defendant has not raised an inability to comply defense. But it has asserted (at 5) that it "has made good faith and reasonable efforts to comply with this Court's Order" and implies that it is in substantial compliance. For the following reasons, however, Defendant has not carried its burden to establish those defenses to civil contempt.

3

> **A.** **Defendant Cannot Establish the Good Faith or Substantial Compliance Defenses to Civil Contempt Because It Has Failed to Take *All* Reasonable Steps to Ensure Compliance.**

As noted above, the Fourth Circuit has made clear that "good faith alone does not immunize a party from a civil contempt sanction for non-compliance with a court order." *McLean*, 762 F.3d at 1210. Rather, a party must demonstrate that it "made in good faith all reasonable efforts to comply … ." *De Simone*, 36 F.4th at 529 (quoting *United States v. Ali*, 874 F.3d 825, 831 (4th Cir. 2017)). Similarly, a "substantial compliance" defense to civil contempt requires a defendant to take "all reasonable steps … to ensure compliance." *Id.* at 530 (quoting *United States v. Darwin Constr. Co.*, 873 F.2d 750, 755 (4th Cir. 1989)). And the Fourth Circuit has made clear that all means all. *Id.* at 530 (clarifying a defendant needs "to take '*all* reasonable steps' to ensure compliance" (emphasis original)). In other words, Defendant's attempt to look busy is not a defense to civil contempt. Saying "we tried" is not enough. *See Consolidation Coal Co.*, 683 F.2d at 832 (holding that undertaking foreseeably ineffective efforts did not establish good faith or substantial compliance). A party must take *all* reasonable steps to avoid civil contempt, and Defendant falls well short of that mark.

> 1. *Defendant Did Not Take All Reasonable Steps to Ensure Compliance with the September 6, 2023 Selenium Compliance Deadline.*

Defendant touts (at 2) the following efforts to implement selenium treatment prior to September 6, 2023:

> Since Lexington Coal submitted the Remediation Plan on September 6th, 2022, Lexington Coal has constructed all four bioreactors to treat selenium from White Flame. Also, Lexington has lined and placed media in two of the bioreactors. In addition, Lexington Coal located a generator to provide temporary power to the pump which will bring water up to bioreactors 1 and 2. Lexington Coal had the generator repaired and moved the generator to the White Flame site on October 12th, 2023. Lexington Coal has welded over eight thousand feet of pipe that will

4

> be used to plumb the bioreactors. Lexington has now plumbed two of the bioreactors but is currently working on installing the pipe down to Outlet 31.

Nonetheless, Lexington Coal does not expect to activate even the first two (of four) bioreactors for "a couple of weeks." CM/ECF #128 at 2.

Defendant's characterizations of its efforts alone show that it did not take all reasonable steps to ensure compliance by September 6, 2023. It is still working on the basics of the system—providing power and plumbing the system—more than six weeks after the deadline. Such basic tasks are reasonable steps that should have been accomplished *before* the selenium compliance date.

Indeed, the record in this case is replete with evidence of reasonable steps that Defendant should have taken in advance of the September 6, 2023 selenium compliance deadline but did not. Defendant's October 4, 2023 status report states that, for the next reporting period, it "is looking for another pump to service BCR 2." CM/ECF #128-2 at 2. Acquiring the necessary equipment to operate the treatment system is a reasonable step that should have been performed *before* the compliance deadline, not during the second month following the passage of that deadline.

Moreover, the GANTT chart that Defendant provided when it submitted its current remediation plan and asked the Court to purge its contempt on September 6, 2022, show additional reasonable steps that Defendant failed to take. By Defendant's own admissions on that chart, to achieve compliance by September 6, 2023, it needed to complete "BCR Construction Earthwork" before November 1, 2022. CM/ECF #88-4 at 2. But Defendant did not complete all excavation for the BCR ponds until sometime during August 2023. Exhibit D at 1 (Defendant's August 2023 Monthly Status Report). Additionally, to achieve compliance by September 6, 2023, Defendant projected that it would need to activate all of the BCRs by January 1, 2023, and

5

complete "[a]djustment[s] for performance" by March 1, 2023. CM/ECF #88-4 at 2. Yet, as of October 17, 2023, Defendant was still "a couple of weeks" away from completing the reasonable step of activating any of its BCRs, let alone all of them or adjusting them for performance. CM/ECF #128 at 5.

Finally, Defendant claims (at 4) that it "has continued to implement comments from the Special Master." Not so. Defendant's demonstrable failures to adhere to the timelines and milestones prescribed by Special Master Kyles show additional reasonable steps to ensure compliance that Defendant failed to take prior to the September 6, 2023 deadline.

***First***, Special Master Kyles recommended that Defendant "[d]evelop a site-wide Mass Balance Model for mitigation of selenium contamination that reflects current flow and water quality, seasonally variable conditions, and implementation of Best Management Practices." CM/ECF #128-5 at 6. The Special Master's timeline called for the data for the Mass Balance Model be assembled by May 22, 2023, and the baseline model to be completed by July 5, 2023. *Id.*

Defendant submitted a "Proposed Water Budget" on June 14, 2023, to the Special Master, but that submission was deficient in a number of ways. *Id.* Although Defendant submitted additional information to the Special Master in August 2023, the Special Master noted that even the new information did "not address the main deficiencies" or the Special Master's recommendations. CM/ECF #128-6 at 2. Defendant's efforts to take the reasonable compliance step of developing a Mass Balance Model fell woefully short, "address[ing] only the barest minimum information regarding current water flows, selenium concentrations and ionic quality. All other aspects of the recommendations noted above have not been addressed." *Id.*

6

The Special Master was particularly critical of Defendant's efforts to determine baseline flows. *Id.* at 3. The Special Master identified two "technically correct approach[es]" (*i.e.*, reasonable steps) to establish baseline flows, and noted how Defendant's apparent approach digressed from those approaches and led to discrepancies in predictions of average flow. *Id.* A similar failure to correctly measure baseline flow contributed to this Court's finding of contempt against a coal company that had similarly failed to meet its selenium compliance deadline. *See Ohio Valley Envtl. Coalition, Inc. v. Apogee Coal Co., LLC*, 744 F.Supp.2d 561, 573 (S.D. W. Va. 2010) ("If this defendant had used a good faith effort to comply, surely it would have carefully evaluated the conflicting flow estimates and recognized the necessity of conducting the recommended monitoring and studies.").

In short, a reasonable step to ensure compliance with the September 6, 2023 compliance deadline would have been timely completion of a Mass Balance Model by July 5, 2023. Defendant did not do that.

***Second***, the Special Master recommended that Defendant evaluate BCR performance against its design parameters and quantify any benefit of Defendant's proposed carbon additions. CM/ECF #128-5 at 7. The Special Master prescribed a deadline of June 21, 2023, for the submission of a pilot test plan, but Defendant has never submitted any bench or pilot test plans pursuant to the recommendation. *Id.*

***Third***, Special Master Kyles instructed Defendant to ensure that BCR construction is "overseen and inspected by a professional with specific experience in BCR design, installation, and operation." *Id.* Special Master Kyles also requested that BCR bed construction be documented, including photographs of the beds and media placement in the BCRs. *Id.* Special Master Kyles also requested "[d]etails on the influent and effluent distribution piping … ,

7

including drawings and/or photographs showing the pipelines to be used." *Id.* Special Master Kyles advised Defendant that these reasonable steps to ensure compliance should be completed "ASAP"—essentially in April 2023. *Id.*

In response, on June 15, 2023, Defendant submitted *curricula vitae* for Lantz Rankin and Kermit Fincham (*id.*), who have been involved in this project since well before the Special Master's involvement in this case. But in his July 20, 2023 Memorandum, the Special Master noted his persistent "concern[] regarding the technical expertise being provided to Defendant on the project," (*id.* at 1), even after he received the *curricula vitae* for Mssrs. Rankin and Fincham.

Moreover, Defendant never provided Special Master Kyles with documentation of BCR bed construction or details on influent and effluent piping. *Id.* at 7. Indeed, Special Master Kyles noted Defendant's failures on that front in his October 19, 2023 email to the Parties and the Court:

> Details regarding the physical construction of the BCRs (media composition, layering, distribution piping, collection piping, etc.) have been requested by the Special Master as early as April 2023; however, only the BCR volume certification drawings have been received to date. These do not contain any information regarding media or piping or details on construction means and methods, all of which may impact performance of the BCRs.

Exhibit E at 1 (Special Master Kyles's Oct. 19, 2023 E-mail). In short, Defendant failed to take the reasonable steps of obtaining competent technical guidance or detailing and designing BCR bed construction and influent and effluent plumbing. Accordingly, they cannot avail themselves of the good faith or substantial compliance defenses to civil contempt.

Those particular failures are coming home to roost for Defendant. When Special Master Kyles finally received a photograph of how Defendant was placing media within the BCR basins (because that photograph was attached to Defendant's response to the pending contempt motion and provided more than a month after the September 6, 2023 compliance deadline), he promptly

8

flagged that Defendant was not following industry standard methods and was risking creating "short-circuiting" conditions within the BCRs. Exhibit E at 1.

Defendant's October 25, 2023 response to the Special Master's questions about those issues further underscore that it has not taken reasonable steps to ensure compliance, and only triggered additional questions from the Special Master in an October 26, 2023 e-mail. Despite the Special Master's requests for design details and/or as-built drawings, Exhibit E at 4, Defendant entirely failed to provide any as-built drawings, Exhibit F (Defendant's Oct. 25, 2023 Response to Special Master Kyles). And, to the extent Defendant's response could be characterized as providing "design details," those details are narrative in nature, at a high-level of generality with no specifics, and entirely lacking any quantification of media composition proportions, size of the gravel layer, or pipe sizing. Exhibit F.

Defendant appears entirely nonplussed by the risks of short-circuiting as a result of it operating a tracked vehicle on top of the media in the BCR. Special Master Kyles noted that the industry-standard media installation method

> avoids *any* vehicle traffic on the media and prevents compaction. This is particularly important to avoid any short-circuiting of flows through the BCR and to ensure that design contact times with media are achieved. … Compaction of media within the BCR may create flow channels that would allow for short-circuiting of the BCR flow routes within the cell, reducing treatment levels via reducing contact times within the BCR. As such, care is typically used when installing and placing treatment media within the BCRs.

Exhibit E at 1 (emphasis added). But Defendant's October 25, 2023 response shrugs off the Special Master's concerns, insisting that, if short-circuiting develops, it will simply "fluff the material" using some undefined process. Exhibit F. Stated otherwise, Defendant is not willing to take reasonable steps to ensure timely compliance (such as avoiding media compaction), because it would prefer to accept the risk of compaction and offer an ill-defined and questionable cure

9

later. But "[a]n ounce of prevention is worth a pound of cure." Benjamin Franklin, The Pennsylvania Gazette, February 5, 1735. A party serious about meeting a court-ordered compliance deadline would not risk further non-compliance by taking shortcuts that—in the Special Master's words—risk "potential disaster." Exhibit G (Special Master Kyles's October 26, 2023 E-mail).

Beyond media compaction, the Special Master also expressed concern about media layering, noting that "[i]ndustry practice for BCR construction is to carefully place the media in layers … .". Exhibit E at 1. The Special Master asked Defendant about media thicknesses and composition, and whether Defendant had used a geotextile liner to protect the PVC liner. *Id.* at 3. Special Master Kyles again noted that without design details or as-built drawings, he could not determine whether the BCR cells were constructed to design or industry standards. *Id.*

Rather than providing specific design details or as-built drawings, Defendant only identified the components of its media ("hay, wood chip, and a mushroom compost") and stated that the media was mixed rather than layered. Exhibit F. The only justification Defendant gave for deviating from the industry standard identified by Special Master Kyles is that (in its view) mixing allows for more efficient fluffing—Defendant's expected remedy to the short-circuiting that could result from its media compaction. *Id.* Defendant did not provide details about the proportions or volumes of the components of its media, *id.*—an omission noted by the Special Master, Exhibit G. The Special Master also noted that Defendant did not provide the thickness of its claimed gravel layer, and noted that the Cardno design called for a two-foot-thick layer of gravel at the bottom of the BCR. *Id.* Defendant also failed to answer the Special Master's question about the use of a geotextile fabric. Exhibit F.

10

Defendant was equally elusive in its response to the Special Master's inquiries about distribution and collection piping layout and sizing. *Id.* Defendant insisted that grid piping was not necessary because of the size of BCR 1, and claimed that its design "is generally the same as the Cardno design," without explaining (let alone justifying) the differences or providing as-built drawings to allow the designs to be contrasted. *Id*. Moreover, Defendant utterly failed to provide any information about the layout and sizing of distribution piping, or the sizing of the collection piping. *Id.* Indeed, the Special Master noted that deficiency in his follow-up questions to Defendant, observing that more information was needed about "the piping arrangement for influent and effluent." Exhibit G. Special Master Kyles has been asking for piping diagrams since April 2023, CM/ECF 128-5 at 7, and reminded Defendant of that request in his October 19, 2023 email Exhibit E at 1. Nonetheless, Defendant failed once more to provide the requested information, Exhibit F, further undermining its claim (at 5) that it "continues to cooperate with the Special Master."

Defendant's incomplete response, its nonchalant defenses of its failures to employ industry-standard practices, and its apparent inability to create design or as-built drawings only strengthen the conclusion that Defendant never took the reasonable step to ensure compliance of retaining competent technical advice. That alone is sufficient reason to reject Defendant's efforts to avail itself of the good faith or substantial compliance defenses to civil contempt.

Defendant's October 25, 2023 response to the Special Master's inquiries confirms that Defendant is going to do things its way and on its preferred schedule, regardless of the input of the Special Master or the deadlines set by this Court. As Special Master Kyles notes, Defendant's failings—which all stem from Defendant's failure to take the reasonable step of seeking competent technical advice—call into question "the viability/utility of the BCR system itself."

Exhibit E at 4. Defendant's persistent refusal to take the basic steps to come into compliance with its selenium limits has led to a situation where such compliance will be even further delayed. The appropriate remedy for Defendant's contemptuous behavior is to assess a <u>per diem</u> civil contempt fine against Defendant in order to motivate it to do more than look busy—it must retain competent technical advisors and employ their recommendations.

    2.    *Defendant Has Not Taken All Reasonable Steps to Ensure Compliance With Narrative Water Quality Standards As Soon As Possible.*

Defendant's efforts to establish that it has taken all reasonable steps to solve its ionic pollution problems as soon as possible fare no better than its selenium efforts. Despite the Special Master's contrary conclusion adopted by this Court (*see* CM/ECF #123 at 3), Defendant continues to insist (at 3) that it has "developed a remediation plan for ionic pollution." Defendant also promises (at 3) "an updated hydrograph/water budget in a couple of weeks," and touts an October 31, 2023 conference call set by the Special Master to discuss Defendant's efforts regarding ionic pollution.

But Defendant has not taken all reasonable steps to ensure compliance with West Virginia narrative water quality standards as soon as possible. For example, as with selenium, Defendant failed to complete a Mass Balance Model for ionic pollution by July 5, 2023, as recommended by the Special Master. *See, e.g.*, Doc. #128-5 at 4. The information that Defendant has provided to the Special Master to date has not remedied noted deficiencies or addressed important aspects of the problem. CM/ECF #128-6 at 2. Moreover, Special Master Kyles asked Defendant to take the reasonable step of identifying an ionic pollution treatment technology for pilot testing by June 21, 2023, and commence pilot testing by October 23, 2023. CM/ECF #128-5 at 5. To date, Defendant has neither identified a technology nor commenced pilot testing. *Id.* Indeed, all that Defendant appears to have done with regard to this reasonable step to ensure compliance as soon

as possible is identify a location on its minesite to conduct the pilot testing. Exhibit H. Based on statements made during an October 12, 2023 conference call with the Special Master, Defendant appears to want to seek additional guidance on how to identify a treatment technology for testing during the scheduled October 31, 2023 conference call—more than four months after the date the Special Master recommended that such a technology be identified. CM/ECF #128-5 at 5.

In short, Defendant has made no real progress towards bringing its operations into compliance with narrative water quality standards. It has failed to undertake even the most basic of the recommended reasonable steps toward compliance recommended by Special Master Kyles. Accordingly, per diem civil contempt penalties should be reinstituted against Defendant to "concentrate [its] mind" on compliance. *Taylor v. Home Ins. Co.*, 646 F.Supp. 923, 930 (W.D.N.C. 1986).

### B. Defendant Cannot Establish *Any* Compliance With the September 6, 2023 Selenium Compliance Deadline, Substantial or Otherwise.

The substantial compliance defense is not available to Defendant for an additional reason. Although Defendant invokes that defense (at 4 & 6), it does not and cannot assert that it complied at all—substantially or otherwise—with the September 6, 2023 selenium compliance deadline. The substantial compliance defense might be available to a defendant who has taken all reasonable steps to ensure compliance, but nonetheless commits a technical violation. *See General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir. 1986) ("If a violating party has taken 'all reasonable steps' to comply with the court order, technical or inadvertent violations of the order will not support a finding of civil contempt."). It may also be available in the case of a disagreement on the meaning of a court order. *See JTH Tax, Inc. v. H & R Block E. Tax Servs., Inc.*, 359 F.3d 699, 707 (4th Cir. 2004) (finding substantial compliance with court order based on interpretation on word "prominent" in court order). But it is not available to Defendant here.

The selenium compliance deadline was September 6, 2023—on that point there is no dispute. There is also no dispute that Defendant did not have any aspect of its treatment system operational by that date (or even now). This is not a case where Defendant was mostly in compliance, but committed a one-off violation of its selenium limits. That *might* be substantial compliance. Plaintiffs here are not attempting to hold Defendant to a standard of "perfect compliance." *Cf. Darwin Constr. Co.*, 873 F.2d at 754–55. But what Defendant has done cannot be deemed "compliance" by any stretch of that word—let alone "substantial compliance."

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their pending contempt motion and assess a per diem fine against Defendant until it achieves compliance. Plaintiffs further request an award of attorney fees for these contempt proceedings.

DATED: OCTOBER 27, 2023              Respectfully submitted,

**/s/ Derek O. Teaney**
DEREK O. TEANEY (WVBN 10223)
J. MICHAEL BECHER (WVBN 10588)
APPALACHIAN MOUNTAIN ADVOCATES, INC.
PO Box 507
Lewisburg, WV 24901
Telephone:    (304) 646-1182
Email: dteaney@appalmad.org

JAMES M. HECKER (*pro hac vice*)
PUBLIC JUSTICE
1620 L Street NW, Suite 630
Washington, DC 20036
Telephone:    (202) 797-8600
Email: jhecker@publicjustice.net

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

**WEST VIRGINIA HIGHLANDS**
**CONSERVANCY, APPALACHIAN**
**VOICES, and SIERRA CLUB,**

    **Plaintiffs,**

v.              CIVIL ACTION NO. 3:19-CV-573

**LEXINGTON COAL COMPANY, LLC,**

    **Defendant.**

## CERTIFICATE OF SERVICE

  I, Derek O. Teaney, hereby certify that, on October 27, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to each of the following CM/ECF participants:

W. HOWARD SAMMONS II
LAW OFFICE OF W HOWARD SAMMONS II, PLLC
PO Box 5307
Charleston, WV 25361
Telephone: 304-414-6064
Fax:    681-248-6263
Email: howard@sammonslawfirmwv.com

              **/s/ Derek O. Teaney**
              Derek O. Teaney (WVBN 10223)