# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

WEST VIRGINIA HIGHLANDS CONSERVANCY,
APPALACHIAN VOICES, and
SIERRA CLUB,

        Plaintiffs,

v.                                     CIVIL ACTION NO. 3:19-0573

LEXINGTON COAL COMPANY, LLC,

## MEMORANDUM OPINION AND ORDER

Pending is Plaintiffs' Motion to Show Cause Why Defendant Should Not Be Held in Further Civil Contempt of this Court's December 13, 2021 Order. ECF No. 126. For the reasons that follow, Plaintiffs' motion is **GRANTED.**

## I. BACKGROUND[1]

Lexington Coal's liability in this matter has been established since March 2021, when the Court entered orders holding Lexington Coal liable for 1) violations of the selenium limits allowed by its Clean Water Act National Pollutant Discharge Elimination System permit at its Low Gap No. 2 and No. 10 Mines, 2) violations of its Clean Water Act 401 certification for discharging pollutants at the No. 10 Mine causing violations of West Virginia water quality standards,

---

[1] The docket in this case presents the disappointing chronicle of Defendant Lexington Coal's environmental harm and failures to comply with the orders of this Court. For the sake of brevity, the facts provided in this section constitute a non-comprehensive summary of the substantive and procedural background in this case.

and 3) violations of the Surface Mining Control and Reclamation Act at the No. 2 and No. 10 Mines for discharging excess levels of selenium and ionic pollutants. *Mem. Op. & Order*, ECF No. 29; *Order*, ECF No. 31.

Following the Court's liability ruling, the Parties attempted to settle the remainder of this action but were ultimately unable to come to a compromise. Thereafter, the Plaintiffs asked the Court to order injunctive relief. *Mot. Inj. Relief*, ECF No. 49.

Upon a finding a that the Plaintiffs were entitled to a permanent injunction, on December 13, 2021, the Court granted Plaintiffs' motion and directed Lexington Coal to do the following:

1) submit a plan to come into compliance with the CWA and SMCRA within thirty days;

2) achieve compliance with selenium limits no later than one year from the date of the plan submission, and

3) achieve compliance with West Virginia standards related to ionic pollution as soon as possible.

*Mem. Op. & Order*, ECF No. 54.[2]

However, the remediation plan submitted by Lexington Coal on January 13, 2022, contained many deficiencies. *See Mem. Op. & Order* (March 16, 2022), ECF No. 60. Notwithstanding Plaintiffs' request that Lexington Coal be held in civil contempt, on March 16, 2022, the Court granted it an additional opportunity to develop and submit a plan that met the requirements of the December 13, 2021 order. *Id.*

In order to ensure Lexington Coal's compliance, the Court's March 16, 2022 order further imposed the following requirements:

---

[2]  A plain reading of the Court's December 12, 2021 order, shows that the Court anticipated Lexington Coal would achieve selenium compliance by January 13, 2023.

1) The plan must be certified by a professional engineer who must provide an affidavit that, upon his or her professional judgment, compliance for selenium limits will be accomplished within one year and ionic pollution restrictions will be met as soon as possible.

2) The plan must include references to other similar operations where the chosen technology has reduced the pollutants of concern to acceptable levels. Alternatively, the professional engineer must demonstrate experience in treating selenium and ionic pollution in Appalachian mine sites.

3) Th plan must also include a GANTT chart defining the steps of the compliance process, a timeline for completion of each step, and a date for final compliance.

4) Defendant must submit monthly reports to Plaintiffs and this Court describing their process and proposed plan moving forward.

*Id.*

Yet April 16, 2022, came and went without the submission of a supplemental plan. Lexington Coal proffered that it missed the Court's deadline because it had abandoned its original plan and started over. *Def. Lexington Coal Co., LLC's Resp. in Opp. To Pls.' Mot. for Civil Contempt*, ECF No. 67. This explanation, of course, failed to explain why it simply let the Court imposed deadline pass without a request for additional time.

On May 18, 2022, the Court entered a memorandum opinion and order granting Plaintiffs' motion to hold Lexington Coal in civil contempt. *See Mem. Op. & Order*, ECF No. 70. Therein the Court recognized that there was clear and convincing documentary evidence that Lexington Coal's conduct met the factors required for an order of civil contempt. The Court specifically noted Lexington Coal's complete failure to comply with the requirements outlined by the Court in its December 13, 2021 and March 16, 2022 orders.

The Court's May 18, 2022 order provided Lexington Coal with 10 days to submit a plan that complied with the Court's previous orders and provided that if Lexington Coal did not comply within that 10 day timeframe, it would be assessed a per diem fine of $1,000.

Lexington Coal submitted a new plan on May 31, 2022, but that plan was once again found to be lacking, as it contained only conclusory assertions that compliance would be achieved. Finding that it was "evident from this bare-bones plan that Defendant is unwilling to adequately comply with this Court's mandates," the Court ordered Lexington Coal to pay $1,000 per diem fines beginning on May 29, 2022. *Mem. Op. & Order*, ECF No. 80. The Court further ordered that if Lexington Coal failed to purge its contempt by August 1, 2022, the daily sanction would increase to $1,500. *Id.* at 4.

Unsurprisingly given the Defendant's track record, Lexington Coal's August 15, 2022 status report yet again failed to satisfy the conditions set forth by the Court. Accordingly, the Court increased the per diem sanction to $1,500. *Mem. Op. & Order*, ECF No. 84. At this time, the Court made clear that it was "losing patience with Defendant's inability to satisfy its court-ordered directives," and provided that "[s]anctions will continue, and further noncompliance will result in increasing sanctions and a show-cause order directing Defendant's corporate officer to appear." *Id.* at 4.

Lexington Coal submitted a new remediation plan and moved the Court to purge its contempt on September 6, 2022. *Def.'s Mot. to Purge Contempt*, ECF No. 88. Lexington Coal touted that under this September 6, 2022 plan, it would obtain approved selenium limits within a year and once again avowed that it would obtain compliance with ionic pollution standards "as soon as possible" *Id.*

While the Court did, and has not, purged Lexington Coal of its contempt, it agreed to stay the accrual of the daily fines and allow the Defendant to move forward with its remediation plan. *See Order*, ECF No. 89; *Order*, ECF No. 95. By the time the Court stayed the accrual of the $1,500 per diem fine on September 6, 2022, Lexington Coal had racked up $69,500 in contempt fines.

In January 2023, Plaintiffs filed a memorandum detailing the continued insufficiency of Lexington Coal's remediation plan and efforts. *See Pls.' Resp. to the Court's Dec. 7, 2022 Order*, ECF No. 97. Thereafter, the Court held a status conference during which it raised the possibility of appointing a special master pursuant to Federal Rule of Civil Procedure 53. *Order*, ECF No. 104.

Ultimately, the Parties consented to the appointment of Special Master James Kyles, and the Special Master was formally appointed by order of the Court on February 23, 2023. *Order Appointing Special Master*, ECF No. 110. Per the Court's order, Special Master Kyles was given the authority, *inter alia*, to evaluate Lexington Coal's remediation plan to determine whether, in his opinion to a reasonable degree of engineering certainty, it satisfied the Court ordered requirements.

In April 2023, Special Master Kyles circulated an Opinion and Recommendation report, which opined, based on the remediation plan submitted in September 2022, that Lexington Coal *may* achieve compliance with selenium discharge criteria by September 6, 2023. Significantly, Special Master Kyles was not confident that Lexington Coal was going to make much process in addressing ionic pollutants absent a "more rigorous engineered approach and continued oversight of the Court and/or a Special Master."

In view of Special Master Kyles's report, the Court optimistically found that Lexington Coal was working to develop a plan with a reasonable likelihood of reaching compliance as to selenium and ionic pollutants and that ongoing monetary penalties were not necessary to coerce its performance. Accordingly, on July 14, 2023, the Court denied Lexington Coal's motion to be purged of its contempt but continued to stay the accrual of the per diem fines. *Order*, ECF No.

123. Despite its suspension of the per diem fines, the Court noted that it would continue to monitor Lexington Coal's efforts to reach compliance.

Since July 2023, Lexington Coal has submitted monthly status reports and Special Master Kyles has continued to meet with the Parties to assess Lexington Coal's progress.

The instant motion was filed by Plaintiffs on October 4, 2023. Plaintiffs note that Lexington Coal's September 6, 2023 deadline has come and passed, and Lexington Coal has not achieved compliance with its selenium effluent limitations. *Mem. in Supp. of Mot. to Show Cause*, ECF No. 127. In fact, at the September 19, 2023, status conference with Special Master Kyles, Lexington Coal noted that it was not yet in a position to activate any of the proposed biochemical reactor ("BCR") treatment systems.[3] *Id.* at 5. Moreover, Plaintiffs submit that "little to no progress has been made with regard to ionic pollutants[.]" *Id.*

With respect to its compliance with its selenium effluent limitation, Lexington Coal submits that since September 6, 2022, it has constructed four BCRs, two of which are lined, filled with media, and plumbed.[4] *Def.'s Resp. to Pls.' Mot.*, ECF No. 128, at 3–5. Additionally, it states that it has placed a generator at the White Flame site and expects that the first two BCRs will be "functional within a couple of weeks." *Id.* at 5. It avers that it has "made good faith efforts to comply with this Court's Orders [and] therefore did not knowingly violate the Court's orders. *Id.*

With respect to addressing ionic pollution, Lexington Coal submits that it has "hired experts, performed sampling and continues to cooperate with the Special Master to implement a

---

[3] The Court understands that once activated, it will be some time before the BCRs are actually able to provide "treatment."

[4] Lexington Coal states that "[t]he only piping left to be put in for bioreactor 1 and 2 is running pipe down to the Outlet which is expected to be completed in the next couple of weeks."

stringent engineering approach to ionic pollution." *Id.* at 5. Lexington Coal does not identify what that stringent engineering approach is or when it expects to make any meaningful progress.

In their reply memorandum, Plaintiffs noted that in addition to Lexington Coal failing to meet, or even making substantial progress toward, its September 6, 2023 deadline for selenium compliance, the Special Master has raised concerns that the work that has been done on the BCRs in recent weeks deviates from industry standards. *Reply in Supp. of Pls.' Mot.*, ECF No. 131, at 8–12. Plaintiffs further note that when pressed on these deviations, Lexington Coal has been both elusive and dismissive in its responses, despite the Special Master's remarks that some deviations from industry standards could result in "potential disaster." *Id.* at 10.

## II. LEGAL STANDARD

Our Circuit has established that the propriety of civil contempt is analyzed using a burden-shifting framework. First, the party moving for a contempt order must "prove each of these elements by clear and convincing evidence: (1) the existence of a valid court order; (2) the order was in the moving party's 'favor'; (3) a knowing violation of the terms of the order; and (4) the moving party suffered harm from the violation." *Consumer Fin. Prot. Bureau v. Klopp*, 957 F.3d 454, 461 (4th Cir. 2020) (citing *United States v. Ali*, 874 F.3d 825, 831 (4th Cir. 2017)).

If those elements are established, "the burden shifts to the defendant to show 'good faith [in making] all reasonable efforts to comply with the enforcement order.'" *Id.* at 461–62. Should the defendant fail to meet this burden, it may be held in civil contempt. *Id.* A party may also defend against a finding of civil contempt if it can establish substantial compliance or an inability to comply. *See Consol. Coal. Co. v. Loc. 1702, Union Mineworkers of Am.*, 683 F.2d 827, 832 (4th Cir. 1982).

The Court can find a party in civil contempt without holding a hearing when documentary evidence is sufficient to establish contemptuous conduct. *In re Gen. Motors Corp.*, 110 F.3d 1003, 1016 (4th Cir. 1997) (citing *Commodity Futures Trading Comm'n v. Premex, Inc.*, 655 F.2d 779, 782 n.2 (7th Cir. 1981)).

### III. ANALYSIS

In bears repeating that Lexington has already been found in civil contempt of this Court's December 13, 2021 and March 16, 2022 orders. That contempt has not been purged and remains to this date. The questions before the Court, then, are whether its conduct merits additional findings of contempt and if so, what sanctions should be imposed to compel Lexington Coal's compliance.

As to the first question, Plaintiffs have met their burden of establishing each element of civil contempt by clear and convincing documentary evidence. *See Consumer Fin. Prot. Bureau*, 957 F.3d at 461 (setting forth elements). It is undisputed that the Court's December 13, 2021 and March 16, 2022 orders remain valid and that the orders were in the Plaintiffs' favor. Additionally, it is apparent that the Plaintiffs have suffered ongoing harm by Lexington Coal's failure to remediate the environmental harm it has caused. In fact, the only element disputed by Lexington Coal is whether its ongoing violations are "knowing." *See Def.'s Resp. to Pls.' Mot.* at 3–6.

It simply cannot be said that Lexington Coal is not knowledgeable of its obligations under the Court's orders; they have been repeated ad nauseum. *See, e.g.*, *Mem. Op. & Order*, ECF No. 54; *Mem. Op. & Order*, ECF No. 60; *Mem. Op. & Order*, ECF No. 70; *Order*, ECF No. 84; *Order Appointing Special Master*, ECF No. 110. To be sure, Lexington Coal has paid $69,500.00 in contempt fees for its previous failures to comply with the very same orders.

Nor can it be said that Lexington Coal is not aware that it has failed to comply. Lexington Coal's own memorandum makes clear that it is, at a minimum, weeks away from *starting* selenium treatment at *half* of the proposed BCRs. *See Def.'s Resp. to Pls.' Mot.* at 2, 4. It does not even attempt to suggest when it expects the output to be *compliant* with effluent limitations.

Lexington Coal's compliance with the Court's mandates regarding ionic pollution fares much worse. A generous reading of Lexington Coal's most recent submission suggests that it has "hired experts" and conducted testing confirming impairment. *Id.* at 4, 6. But it provides no legitimate explanation of when its remediation plan will be implemented, let alone effective.

The July 20, 2023 report of the Special Master characterized Lexington Coal's ionic pollutant progress as follows:

> For conductivity/ionic pollutants, the Special Master and his team previously commented that there has been no real design developed, no studies performed, and Defendant is solely relying on a water management strategy (a combination of dilution, reuse onsite, and other approaches) in concert with BCR treatment to achieve compliance. It was and is the opinion of the Special Master that BCR treatment, while effective for selenium removal, will not have a meaningful impact on overall conductivity/ionic pollutant concentrations. As such, the reliance on a water management strategy and/or treatment is critical to meeting the permit requirements.

*Special Master Mem. (July 30, 2023)*, ECF No. 128-5.

Yet, more than a year after it asked this Court to purge its contempt, Lexington Coal failed to provide substantive reports detailing its engineering plan, has not conducted pilot testing, and has failed to address the Special Master's repeated concerns regarding the need for active and rigorous treatment.[5]

---

[5] It is the Court's understanding that Lexington Coal submitted "Proposed Measures to Ameliorate the Effects of Ionic Concentrations for the White Flame and Low Gap Projects" on November 7, 2023. Neither the Court nor the Special Master have had the opportunity to review the contents of the proposal.

Nearly two years after the Court ordered the ionic pollution be remediated as soon as possible, Lexington Coal is moving at a sluggish pace, with no sense of urgency or diligence.

In sum, the Court is satisfied that Lexington Coal has continued to knowingly violate the Court's orders.[6]

Our Circuit has recognized that "[a] single violation [of an order] is sufficient to support a finding of contempt." *Rainbow Sch. Inc. v. Rainbow Early Educ. Holding LLC*, 887 F.3d 610, 618 (4th Cir. 2018). Certainly, Lexington's panoply of *continued* violations is sufficient for a finding of further contempt. Indeed, more than a year after the Court's first order holding it in contempt, Lexington Coal cannot assure the Court that it will come into compliance any time soon.

Because Plaintiffs have established Lexington Coal's further contempt, the burden shifts to Lexington Coal to prove one of the recognized defenses: a good faith attempt at compliance, substantial compliance, and an inability to comply. *Consol. Coal. Co.*, 683 F.2d at 832.

Here, Lexington Coal submits that it has made a good faith attempt at compliance. *See, e.g.*, *Def.'s Resp. to Pls.' Mot.* at 5 ("Lexington Coal has made good faith efforts to comply with this Court's Orders therefore did not knowingly violate the Court's orders.").

Notwithstanding Lexington Coal's offerings of good faith, our Circuit has made clear that "good faith alone does not immunize a party from a civil contempt sanction for non-compliance with a court order." *McLean v. Cent. States, Se. & Sw. Areas Pension Fund*, 762 F.2d 1204 (4th

---

[6] As set forth by Plaintiffs, "knowingly" for the purposes of civil contempt is not synonymous with "willful" or "intentional." *See Reply in Supp. of Pls.' Mot.* at 2–3 (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) ("An act does not cease to be a violation … of a decree merely because it may have been done innocently."); *United States v. Westbrooks*, 780 F.3d 593, 596 n.3 (4th Cir. 2015) (noting that civil contempt "does not include a willfulness element")).

Cir. 1985). Instead, Lexington Coal bears the burden of demonstrating that it made "in good faith *all reasonable efforts* to comply" with the Court's orders. *De Simone v. VSL Pharmaceuticals, Inc.*, 36 F.4th 518, 529 (4th Cir. 2022) (quoting *United States v. Ali*, 874 F.3d 825, 831 (4th Cir. 2017)) (emphasis added).

Lexington Coal offered to this Court that it would reach selenium compliance by September 6, 2023. *Def.'s Mot. to Purge Contempt*, ECF No. 88. Yet, more than a month after that deadline, it still lacks even the equipment necessary to operate its proposed treatment systems and is, at a minimum, weeks away from turning on *part* of the system. *Def.'s Resp. to Pls.' Mot.* at 2. Given these submissions, the ultimate timeline for reaching selenium compliance remains unclear to the Court.

What's more, the Court is concerned that the BCRs constructed by Lexington Coal may not be efficient to provide the selenium treatment needed. *See Special Master Mem. (July 30, 2023)*, ECF No. 128-5, at 2 (remarking that at least one of the BCRs "appears to be undersized" and that Lexington Coal has not completed treatability or pilot studies on the waters specific to the White Flame outlets).

While the Court does not dispute that Lexington Coal has taken some steps toward compliance, it cannot find that all reasonable efforts have been made. As pointed out by the Plaintiffs, Lexington Coal has failed to follow the reasonable steps set forth in its own GANTT chart. *See Reply in Supp. of Pls.' Mot.* at 5–6 (citing *GANTT Chart*, ECF No. 88-4); *Special Master Mem. (July 30, 2023)*, ECF No. 128-5, at 2 ("Based on the reports submitted, progress is ongoing, albeit at a slow pace in part due to logistics issues but also because, in the Special Master's opinion, the Defendant has not initiated action in a timely fashion.").

Moreover, communications between the Parties and the Special Master indicate that Lexington Coal has continually provided the Special Master with deficient information and has brushed off the Special Master's concerns regarding Lexington Coal's deviations from industry standards. *See, e.g.*, *Emails with Special Master*, ECF No. 128-6.

If Lexington Coal was attempting to comply with its obligations in good faith, the Court expects it would be actively engaging with the Special Master's concerns and seeking to address any noted deficiencies. *See, e.g.*, *Ohio Valley Env't Coal., Inc. v. Apogee Coal Co., LLC*, 744 F. Supp. 2d 561, 573–74 (S.D.W. Va. 2010). Instead, it appears to be looking for shortcuts and simply hoping disaster does not result.

Furthermore, Lexington Coal makes no effort to convince the Court that it has taken all reasonable steps toward reaching ionic pollution compliance. In fact, the Court is unable to truly assess Lexington Coal's progress on remediating its ionic pollution because it is not clear that any actions have actually been taken.

Having raised no other defenses, the Court concludes that Lexington Coal has failed to carry its burden of showing "good faith [in making] all reasonable efforts to comply with the enforcement order." *Consumer Fin. Prot. Bureau*, 957 F.3d at 461–62 (alteration in original).

Given Defendant Lexington Coal's continued failure to take all reasonable and diligent efforts to fulfill its obligations, the Court is compelled to find Lexington Coal is in continued and additional contempt of the Court's December 13, 2021 and March 16, 2022 orders.

"[T]he essence of civil contempt," of course, "is to coerce future behavior." *Consol. Coal. Co.*, 683 F.2d at 830. It is evident that Lexington Coal will not comply with this Court's directives absent greater coercion. Because both the threat and imposition of small per diem fines have not been sufficient to compel Lexington Coal, the Court implements the following two-step approach.

*First*, the Court **ORDERS** Defendant Lexington Coal to pay a fine of $50,000, to be paid to the Court within 30 days of entry of this order. The Court notes that this contempt fine is intended to be compulsory rather than punitive in nature. The Court is optimistic that this fine will compel Lexington Coal to make greater effort to achieve compliance with the Court's directives, particularly those relating to Lexington Coal's ionic pollution.

*Second*, on top to the $50,000, the Court believes that firm deadlines must be set to ensure Lexington's future compliance. Additionally, the Court finds that the Special Master is in the best position to determine a feasible and appropriate timeline for Lexington Coal's compliance.

Accordingly, the Court **INSTRUCTS** Special Master Kyles to:

1) Develop a schedule for selenium compliance with firm deadlines for:

    a. Lexington Coal completing the construction of the selenium treatment BCRs,

    b. Lexington Coal's BCRs operating and discharging water,

    c. Lexington Coal achieving effluent limitation compliance for selenium.

2) Prepare an updated GANTT chart with firm deadlines Lexington Coal's ionic pollution remediation.

To implement these deadlines, the Special Master is authorized to impose, consistent with reasonable engineering practices, interim requirements for planning, testing, and completion of treatment systems.

Upon consultation with Special Master Kyles, the Court expects that these deadlines will be established in short order. Upon review, the Court anticipates entering a separate order adopting Special Master Kyles' schedules and setting forth the consequences for failing to comply with future deadlines to the satisfaction of the Special Master and the Court.

## IV. CONCLUSION

Plaintiffs' Motion to Show Cause Why Defendant Should Not Be Held in Further Civil Contempt of this Court's December 13, 2021 Order (ECF No. 126) is **GRANTED.**

The Court **DIRECTS** Defendant Lexington Coal to remit to the Clerk the contempt fine of $50,000.00 on or before **December 18, 2023.**

Special Master Kyles is **INSTRUCTED** to prepare the schedules described herein with all reasonable diligence.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record, Special Master James Kyles, and any unrepresented parties.

ENTER: November 17, 2023

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE