# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

WEST VIRGINIA HIGHLANDS CONSERVANCY,
APPALACHIAN VOICES, and
SIERRA CLUB,

               Plaintiffs,

v.                                                                      CIVIL ACTION NO.   3:19-0573

LEXINGTON COAL COMPANY, LLC,

               Defendant.

## MEMORANDUM OPINION AND ORDER

Pending is Plaintiffs' Motion to Hold Defendant in Further Contempt. ECF No. 147. On July 25, 2024, the Court entered a Show Cause Order directing Special Master James Kyles to provide an update on Defendant Lexington Coal's compliance with the Court's orders and the Special Master's directives. ECF No. 144. The Court also directed Plaintiffs and Defendant to file Responses to the Special Master's Memorandum and attend a hearing on the propriety of additional sanctions or Court directives. *Id.*; ECF No. 148.

After considering the Special Master's Memorandum, ECF No. 145, the Parties' Responses, ECF No. 146; ECF No. 147, the hearing held on September 25, 2024, ECF No. 149, and the subsequent report of the Special Master, ECF No. 151, the Court **GRANTS** Plaintiffs' motion.

### I.     Background

Defendant Lexington Coal's disrespect for the environment and this Court's orders has permeated every stage of this litigation.

On March 22, 2021, the Court held Lexington Coal liable for ongoing violations of the Clean Water Act ("CWA) and the Surface Mining Reclamation and Control Act ("SMCRA"). ECF No. 29. Specifically, the Court entered an order holding Lexington Coal liable for several violations at Low Gap No. 2 and No. 10 Mines. *Id.* The violations were: 1) exceeding the selenium limits allowed by Lexington Coal's CWA National Pollutant Discharge Elimination System ("NPDES") permit, 2) discharging pollutants to a level that caused violations of West Virginia water quality standards and Lexington Coal's CWA 401 certification, and 3) discharging excess levels of selenium and ionic pollutants in violation of the SMCRA. *Id.*; ECF No. 31.

On December 13, 2021, after the Parties to this case were unable to reach a compromise, the Court granted Plaintiffs' motion for injunctive relief. ECF No. 54. The Court ordered Lexington Coal to do the following:

1) submit a plan to come into compliance with the CWA and SMCRA within thirty days;
2) achieve compliance with selenium limits no later than one year from the date of the plan submission, and;
3) achieve compliance with West Virginia standards related to ionic pollution as soon as possible.

*Id.* Notably, this Order shows the Court expected Lexington Coal to come into compliance with the selenium limits by January 13, 2023.

On January 13, 2022, Lexington Coal submitted a plan to come into compliance, ECF No. 55, which the Court recognized as "insufficient to meet the requirements of [the] Order," ECF No. 60. However, on March 16, 2022, the Court granted Lexington Coal an additional month to file a supplemental plan. *Id.* The Court imposed the following additional requirements for the supplemental plan:

1) The plan must be certified by a professional engineer who must provide an affidavit that, upon his or her professional judgment, compliance for selenium

       limits will be accomplished within one year and ionic pollution restrictions will be met as soon as possible.
2) The plan must include references to other similar operations where the chosen technology has reduced the pollutants of concern to acceptable levels. Alternatively, the professional engineer must demonstrate experience in treating selenium and ionic pollution in Appalachian mine sites.
3) It must also include a GANTT chart defining the steps of the compliance process, a timeline for completion of each step, and a date for final compliance.
4) Defendant must submit monthly reports to Plaintiffs and this Court describing their process and proposed plan moving forward.

*Id.* Despite the second chance, Lexington Coal disregarded the new deadline. ECF No. 70.

On May 18, 2022, the Court granted Plaintiffs' motion to hold Lexington Coal in contempt. *Id.* The Court noted Lexington Coal's complete failure to comply with the requirements outlined in the Court's orders and imposed a *per diem* fine of $1,000 if Lexington Coal failed to comply with the Court's orders within ten days. *Id.*

Thirteen days later, on May 31, 2022, Lexington Coal submitted a new plan. ECF No. 71. Again, Lexington Coal's plan was inadequate. Due to this "bare-bones plan[,]" the Court determined Lexington Coal was "unwilling to adequately comply with this Court's mandates." ECF No. 80. The Court ordered Lexington Coal to pay $1,000 *per diem* fines beginning on May 29, 2022, with the fines increasing to $1,500 *per diem* by August 1, 2022, if Lexington Coal failed to purge itself of contempt. *Id.*

Lexington Coal failed to purge itself of contempt. ECF No. 84. On August 15, 2022, Lexington Coal filed a status report that failed to satisfy the conditions set by the Court. *Id.* The Court increased the sanctions to $1,500 *per diem*. Stated mildly, the Court was "losing patience with Defendant's inability to satisfy its court-ordered directives." *Id.*

On September 6, 2022, nearly nine months after the initial deadline for a plan, Lexington Coal submitted a new remediation plan and moved the Court to purge its contempt. ECF No. 88.

In the plan, Lexington Coal proposed a one-year deadline for selenium compliance by September 6, 2023, and avowed to obtain compliance with ionic pollution standards "as soon as possible." *Id.* The Court did not purge Lexington Coal of contempt but did stay the accrual of the *per diem* fines and allowed Lexington Coal to proceed with the new plan. ECF No. 89; ECF No. 95. The Court retained the "authority to reimpose the sanction should it find the submitted remediation plan insufficient to purge Defendant's contempt." ECF No. 89.

On January 18, 2023, Plaintiffs filed a memorandum arguing Lexington Coal's remediation plan and efforts were insufficient. ECF No. 97. In a status conference on February 8, 2023, the Court suggested the appointment of a special master pursuant to Federal Rule of Civil Procedure 53. ECF No. 103; ECF No. 104. The Parties consented, and the Court formally appointed Special Master James Kyles on February 23, 2023. ECF No. 109; ECF No. 110. The Court tasked the Special Master with determining whether Lexington Coal's remediation plan satisfied the Court's requirements. ECF No. 110.

In April 2023, the Special Master circulated an Opinion and Recommendation report. In the report the Special Master opined that Lexington Coal "may achieve compliance with selenium discharge criteria by September 6, 2023." ECF No. 132, at 5. The Special Master had less confidence in Lexington Coal's plans for addressing ionic pollution absent a "more rigorous engineered approach and continued oversight of the Court and/or a Special Master." *Id.*

On July 14, 2023, following this report and continued interactions between the Special Master and the Parties, the Court continued to stay the accrual of the *per diem* fines. ECF No. 123. However, the Court denied Lexington Coal's motion to purge contempt, since Lexington Coal had yet to reach compliance with the Court's orders. *Id.*

Since the July 2023 Order, Lexington Coal has submitted monthly status reports. Further, the Special Master continues to meet with the Parties to evaluate Lexington Coal's progress. However, Lexington Coal has been delinquent on payments to the Special Master on several occasions, requiring court intervention. *See, e.g.*, ECF No. 135; ECF No. 138; ECF No. 141.

On November 17, 2023, the Court again fined Lexington Coal for contempt. ECF No. 132. The Court pointed out that more than a month after the September 6, 2023, selenium compliance deadline, Lexington Coal "still lack[ed] even the equipment necessary to operate its proposed treatment systems and [was], at a minimum, weeks away from turning on *part* of the system." *Id.* Regarding ionic pollution compliance, the Court was "unable to truly assess Lexington Coal's progress on remediating its ionic pollution because [Defendant had not made] clear that any actions ha[d] actually been taken." *Id.* For this round of contempt, the Court fined Lexington Coal $50,000. *Id.*

In addition to the fine, the Court instructed the Special Master to:

1) Develop a schedule for selenium compliance with firm deadlines for:
    a. Lexington Coal completing the construction of the selenium treatment [biochemical reactors ("BCRs")],
    b. Lexington Coal's BCRs operating and discharging water,
    c. Lexington Coal achieving effluent limitation compliance for selenium.
2) Prepare an updated GANTT chart with firm deadlines Lexington Coal's ionic pollution remediation.

*Id.*

On November 30, 2023, the Court adopted the Special Master's memorandum and GANTT chart, which set deadlines for Lexington Coal. ECF No. 133. The six tasks the Special Master required of Lexington Coal and the dates most relevant to the instant proceedings are:

1) To have White Flame BCRs #1 and #2 operating and compliant with selenium discharge criteria by March 16, 2024,

2) To have White Flame BCR #4 operating and compliant with selenium discharge criteria by May 10, 2024,
3) To have White Flame BCR #3 constructed and operating in compliance with selenium discharge criteria if the Special Master determines such action is required,
4) To develop a Water Management Plan to mitigate ionic pollution by January 5, 2024,
5) To develop a Habitat Improvement Plan by May 17, 2024, and
6) To perform Active Treatment Feasibility Studies (Bench and Pilot Tests).

*Id.*

On July 25, 2024, the Court issued a Show Cause Order in which it directed the Special Master to provide a memorandum on Lexington Coal's compliance, or lack thereof. ECF No. 144. The Court also directed the Parties to respond to the memorandum and to appear at a hearing. *Id.*

On August 6, 2024, the Special Master filed his memorandum. ECF No. 145. The Special Master found Lexington Coal was not in compliance with five of the six required tasks. *Id.* The Special Master could not determine whether the third task, the construction of BCR #3, was necessary, as BCRs #1, #2, and #4 are still not fully operating. *Id.* The Special Master noted that "some progress has been made by the Defendant in advancing both selenium and ionic pollutant compliance strategies[.]" *Id.* The Special Master also recognized Defendant had "limited available financial resources." *Id.* Ultimately, the Special Master recommended the Court consider imposing additional contempt sanctions on Lexington Coal. *Id.*

In response, Lexington Coal argues contempt sanctions are unnecessary, contending that Lexington Coal has made good faith efforts and is in substantial compliance with the Court's orders. ECF No. 146. Plaintiffs disagree. ECF No. 147. Plaintiffs have motioned to hold Lexington Coal in further contempt. *Id.*

To date, Lexington Coal has paid $169,500 in sanctions, yet remains in both noncompliance and contempt. *See* ECF No. 81; ECF No. 85; ECF No. 91; ECF No. 134. With the

above under consideration, the Court turns to the question of whether additional contempt sanctions are needed for Lexington Coal to finally come into compliance.

## II. Legal Standard

The Fourth Circuit employs a burden shifting framework in contempt hearings. First, the complainant must prove "each of these elements by clear and convincing evidence: (1) the existence of a valid court order; (2) the order was in the moving party's "favor"; (3) a knowing violation of the terms of the order; and (4) the moving party suffered harm from the violation." *Consumer Fin. Prot. Bureau v. Klopp*, 957 F.3d 454, 461 (4th Cir. 2020) (citing *United States v. Ali*, 874 F.3d 825, 831 (4th Cir. 2017)).

If the complainant establishes these elements, "the burden shifts to the defendant to show 'good faith in making all reasonable efforts to comply with the enforcement order.'" *Id.* (cleaned up). A party may also defend against a finding of civil contempt by establishing substantial compliance or an inability to comply. *See Consol. Coal. Co. v. Loc. 1702, Union Mineworkers of Am.*, 683 F.2d 827, 832 (4th Cir. 1982).

## III. Analysis

Lexington Coal remains in contempt of the Court's December 2021 and March 2022 orders. In November 2023, in conjunction with the most recent finding of contempt, the Court issued another order setting out new tasks and dates for Lexington Coal. The questions now before the Court are whether Lexington Coal's conduct merit additional findings of contempt and, if so, what sanctions are necessary to finally compel Lexington Coal into compliance.

Plaintiffs have established each element of contempt by clear and convincing documentary evidence. *See Consumer Fin. Prot. Bureau v. Klopp*, 957 F.3d 454, 461 (4th Cir. 2020). Lexington Coal does not meaningfully dispute that Plaintiffs have met the burden to establish these elements.

Neither party disputes that the December 2021, March 2022, and November 2023 orders are valid and in Plaintiffs' favor. Further, the reminders from the Court of Lexington Coal's obligations, the monthly meetings with the Special Master and Plaintiffs, and the contempt sanctions already paid leave no doubt that Lexington Coal knew of these violations. Finally, Lexington Coal's unwillingness to remediate the environmental damage continues to harm Plaintiffs.

With the burden shifted, Lexington Coal contends that it has made good faith efforts and is in substantial compliance with the Court's orders.

### A. Selenium Treatment Compliance

Lexington Coal maintains it has acted in good faith and attained substantial compliance with the Court's order pertaining to selenium. Lexington Coal points to the BCRs it built and activated to treat selenium. ECF No. 146, at 2 and Exhibit A. Lexington Coal also notes the "sample results from the Polishing Pond reveal compliant selenium levels after treatment." *Id*. at 2. The Special Master's later report confirms this claim. ECF No. 151, at 4.

Despite these improvements, Lexington Coal is still not in compliance with the Court's orders on selenium. As the Special Master noted in his memorandum, the "BCR effluent water quality still is not compliant with NPDES discharge levels for all permit parameters, with recent issues being DO, BOD5 and COD compliance." *Id.* Further, the data provided to the Special Master leaves unclear whether the BCRs have been operating effectively or are stagnant. *Id.* The Court agrees with the Special Master's findings that Lexington Coal is not in compliance with the first two selenium-related tasks ordered by the Court. *See id.*

Further, while the Court agrees Lexington Coal has made some good faith efforts, Lexington Coal has not made "all reasonable efforts to comply" with the Court's orders. *De Simone v. VSL Pharmaceuticals, Inc.*, 36 F.4th 518, 529 (4th Cir. 2022) (quoting United States v. Ali, 874

F.3d 825, 831 (4th Cir. 2017)). The Court notes as recently as October 18, 2024, the Special Master reported to the Court and all Parties that Lexington Coal has yet to resolve multiple deficiencies in monitoring the BCRs. ECF No. 151, at 4–5 and 7–10. These deficiencies include a lack of flow data for the BCRs and performance data for individual BCR cells. Providing such data without the need for constant prodding is the type of good faith reasonable effort the Court expects from Lexington Coal moving forward.

The Court, however, recognizes Lexington Coal has made significant efforts to achieve compliance with the Court's orders pertaining to selenium. The Court expects Lexington Coal to continue and improve upon these efforts. Therefore, at this time, the Court will not add additional sanctions for selenium-related noncompliance.

B. Ionic Pollution Compliance

Lexington Coal remains woefully behind in its efforts to attain compliance with the Court's orders pertaining to ionic pollution. Lexington Coal again claims good faith and substantial compliance on this issue. However, Lexington Coal promises future efforts and compliance without having much proof of any actions.

Lexington Coal first points to the experts it has hired. ECF No. 146, at 3. However, both the Court and Special Master find Lexington Coal's current expertise inadequate for the tasks at hand, which is why the Court ordered Lexington Coal to hire a new expert. *See* ECF No. 150.

Lexington Coal also points to a "potential" chemical solution for the ionic pollution. ECF No. 146, at 4. However, concerns about the potential toxicity of this chemical solution remain. ECF No. 145, at 9. That Lexington Coal is still identifying "potential" solutions underscores how far it is from achieving compliance with the Court's orders.

Next, Lexington Coal reports it has constructed a pilot project for the active treatment feasibility studies. ECF No. 146, at 4 and 8. Lexington Coal claims that "once sampling is completed during the pilot project, any and all of the requirements regarding the pilot project . . . will be fully satisfied." *Id.* at 4. At the hearing, the Special Master reported that this pilot project was constructed without soliciting input from him. Further, in his most recent report to the Court and the Parties on October 18, 2024, the Special Master determined there were significant deficiencies in the "Pilot Project Work Plan Compilation." ECF No. 151, at 9.

Such behavior is common practice for Lexington Coal. In response to the Special Master's memorandum that Lexington Coal was delinquent on all three ionic pollution tasks, ECF No. 145, at 7–9, Lexington Coal sent supplemental reports for each task and claimed that, from Lexington Coal's perspective, each task was now complete, ECF No. 146, at 8–9. However, in his October 18, 2024, memorandum to the Court and the Parties, the Special Master's conclusions were the same as before—Lexington Coal remains in noncompliance for each task. ECF No. 151, at 7–10.

If Lexington Coal is under the impression that it can cobble together last minute, ineffective plans and declare that it has accomplished the Court's orders, it is severely mistaken. Lexington Coal has failed to achieve any of the main ionic pollution tasks set by the Court and has very little progress to show. ECF No. 145, at 7–9.

The Court hopes the new expert will be sufficient to lead Lexington Coal to finally achieving the Court's orders. However, Lexington Coal has repeatedly demonstrated that the Court's hopes and expectations are insufficient to spur action. Therefore, finding that Lexington Coal has not made all reasonable good faith efforts nor achieved substantial compliance regarding ionic pollution, the Court finds additional sanctions are necessary. *See Consol. Coal. Co.*, 683 F.2d at 832.

C. *Sanctions*

As detailed above, Lexington Coal has paid $169,500 in sanctions and has yet to comply with the Court's orders. The goal of civil contempt sanctions "is to coerce future behavior." *Id.* at 830. Unfortunately, this significant sum of money has proven insufficient to coerce Lexington Coal into compliance.

Plaintiffs ask the Court to lift the stay on the *per diem* sanctions and fine Lexington Coal $2,162,500. ECF No. 147, at 11–13. Plaintiffs also ask that the Court leave in place the *per diem* fines and allow the sanctions to accrue. *Id.* If the Court were to adopt Plaintiffs' argument but only apply ionic pollution-related sanctions, the sanctions would total $1,402,500. The Court finds any of these options too severe at this time, as sanctions at these levels may be destructive rather than coercive.

Instead, as noted above, the Court recognizes that Lexington Coal has made some meaningful efforts to comply. Therefore, the Court has developed a different approach to sanctions with the hope that these sanctions will push Lexington Coal to achieve compliance.

*First*, the Court **ORDERS** Defendant Lexington Coal to pay a $50,000 fine to the Court within 45 days of entry of this order. This contempt fine is intended to be compulsory rather than punitive.

*Second*, the Court finds that while Lexington Coal has demonstrated some willingness to attempt to comply with the Court's orders, it has been hesitant to spend the necessary funds to finally achieve compliance. This hesitation is evidenced by Lexington Coal's repeated failure to submit complete, responsive plans and documents to the Court and the Special Master in a timely manner. The Court finds that the lack of overall management and expertise is indicative of Lexington Coal's recalcitrance in achieving compliance. Therefore, the Court **ORDERS**

Defendant Lexington Coal to create a $100,000 fund for the purpose of achieving compliance with the Court's orders. Lexington Coal shall create this fund within 30 days of entry of this order. Lexington Coal may use this fund to pay its engineering consultants and laboratories, the Special Master's invoices, and costs for timely repairs and upgrades to the equipment and systems associated with selenium and ionic pollution compliance. The Court further **ORDERS** Defendant Lexington Coal to designate a corporate officer to oversee this fund, review billings, and certify reasonable and necessary compliance expenses. This officer will submit monthly reports on the fund to the Court, the Special Master, and Plaintiffs.

Lexington Coal must fully replenish this fund whenever the fund drops below $25,000 to ensure it always has adequate funds designated towards achieving compliance with the Court's orders. The Court does not intend for this fund to last indefinitely. If Lexington Coal can demonstrate compliance with the Court's orders, Lexington Coal may move the Court to reconsider the sanctions. Additionally, Lexington Coal may also move the Court to alter the sanctions if Lexington Coal can show less than $100,000 is needed to achieve compliance. Such motions must be made 14 days prior to the fund dropping below $25,000. Otherwise, Lexington Coal must replenish the fund to $100,000.

*Third*, Lexington Coal must comply with the Special Master's directives. The Special Master's October 18, 2024, memorandum sets out a series of dates and directives for how Lexington Coal should proceed. ECF No. 151. The Court **ADOPTS** the Special Master's memorandum insofar as it is consistent with this Memorandum Opinion and Order. The Court **ORDERS** Lexington Coal to meet each deadline and directive set forth by the Special Master in the adopted memorandum except for any that conflict with the Court's orders.

## IV. Conclusion

For the foregoing reasons, Plaintiffs' Motion to Hold Defendant in Further Contempt, ECF No. 147, is **GRANTED**.

The Court **DIRECTS** Defendant Lexington Coal to create a $100,000 fund as described above on or before **December 9, 2024**, and remit to the Clerk the contempt fine of $50,000 on or before **December 23, 2024**. The Court further **ORDERS** Lexington Coal to meet all the deadlines and directives set forth in the Special Master's October 18, 2024, memorandum, ECF No. 151, that do not conflict with this Memorandum Opinion and Order.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record, Special Master James Kyles, and any unrepresented parties.

ENTER: November 7, 2024

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE